NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

18-697


JENNIFER MAYFIELD AND BENDAL MAYFIELD

VERSUS

THOMAS W. FOTHERGILL, ET AL.


**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20155971
HONORABLE DAVID MICHAEL SMITH, DISTRICT JUDGE

**********

**CANDYCE G. PERRET**
**JUDGE**

**********

Court composed of Sylvia R. Cooks, Billy Howard Ezell, and Candyce G. Perret, Judges.


**AFFIRMED.**

**Tracy P. Curtis**
**Curtis Lee Hollinger, Jr.**
**The Glenn Armentor Law Corp.**
**300 Stewart Street**
**Lafayette, LA 70501**
**(337) 233-1471**
**COUNSEL FOR PLAINTIFFS-APPELLANTS:**
**Jennifer Mayfield**
**Bendal Mayfield**

**Gretchen Heider Mayard**
**Katherine Paine Martin**
**John Edward Ortego**
**Martin Mayard, L.L.C.**
**Post Office Box 81338**
**Lafayette, LA 70598-1338**
**(337) 291-2440**
**COUNSEL FOR DEFENDANTS-APPELLEES:**
**State Farm Mutual Automobile Insurance Company**
**Thomas W. Fothergill**

**PERRET, Judge.**

In this action arising out of an automobile collision, Plaintiffs-Appellants, Jennifer Mayfield ("Mrs. Mayfield") and Bendal Mayfield ("Mr. Mayfield"), appeal a trial court judgment that dismissed all of their claims against Defendants-Appellees, Thomas Fothergill ("Mr. Fothergill") and State Farm Mutual Insurance Company (collectively "Defendants"). For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY:**

On December 23, 2014, Mr. Fothergill rear-ended the Mayfield's truck while in holiday traffic on Ambassador Caffery in Lafayette, Louisiana. Thereafter, Mrs. Mayfield filed suit against Defendants arguing that she was a passenger in her husband's truck at the time of the accident and that she is entitled to recover her medical expenses, pain and suffering, loss of enjoyment of life, and loss of consortium. Mr. Mayfield, the driver, only made a claim for his loss of consortium as a result of the alleged injuries to his wife.

Although Defendants admit that Mr. Fothergill was at fault for the accident, they argue that Mrs. Mayfield was not an occupant of her husband's truck at the time of the collision and that the Mayfields are not entitled to recover for any alleged injuries or damages. Consequently, the focus of the jury trial was on whether Mrs. Mayfield was a passenger in Mr. Mayfield's truck at the time of the accident.

After a two-day trial, the jury found that Mrs. Mayfield was not "a passenger in the truck owned and driven by her husband, Bendal Mayfield, at the time the vehicles collided." Pursuant to the jury verdict, the trial court signed a judgment on June 22, 2018, in favor of Defendants and dismissed, with prejudice, all of the Mayfields' claims. The judgment also cast the Mayfields with all court costs.

The Mayfields now appeal this judgment, alleging the following two assignments of error:

1. The jury's verdict, based wholly on implausible testimony, lacks a reasonable factual basis and is thus clearly wrong.

2. The Trial Court erred in not allowing the Crash Report into evidence.

**STANDARD OF REVIEW:**

"The appellate jurisdiction of courts of appeal extend to both law and facts." *Arias v. Stolthaven New Orleans, L.L.C.*, 08-1111, p. 5 (La. 5/5/09), 9 So.3d 815, 818. In order for this court to reverse the factual findings of a jury, manifest error must exist. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). Under a manifest error standard of review, this court can only reverse if it finds, based on the entire record, that there is no reasonable factual basis for the factual finding and that the factfinder is clearly wrong. *Stobart v. State*, *Dep't of Trans. and Dev.*, 617 So.2d 880 (La.1993). As stated in *Rosell,* 549 So.2d at 844-45 (citations omitted):

> When findings are based on determinations regarding the credibility of witnesses, the manifest error—clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.

Thus, this court must be cautious not to re-weigh the evidence or to substitute its own factual findings just because it would have decided the case differently. "The reason for this well-settled principle of review is based not only upon the trial

2

court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts." *Canter v. Koehring Co.*, 283 So.2d 716, 724 (La.1973). However, "when the court of appeal finds that a reversible legal error or manifest error of material fact was made in the trial court, it is required to redetermine the facts de novo from the entire record and render a judgment on the merits." *Arias,* 9 So.3d at 818.

**DISCUSSION:**

The first issue to address is whether the jury manifestly erred in its finding that Mrs. Mayfield was not a passenger in the truck, driven by her husband, at the time the vehicles collided. On this issue, the jury heard testimony from Officer Hilrae Mott, the Lafayette Police Officer who investigated the accident, Mrs. Mayfield, Mr. Mayfield, Mr. Fothergill, and his wife, Simone Fothergill.

Officer Mott testified at trial that he did not have any independent recollection of the automobile accident and couldn't recall any of the occupants of the vehicles or the vehicles that were involved. As such, Officer Mott was asked to review his police report from the accident, but he was still unable to tell "for sure if the passenger of either vehicle or the occupants of either vehicle were there[.]"[1]

Mrs. Mayfield testified that her husband is an electrician and that she occasionally travels with him to make service calls. On the day of the accident, Mrs. Mayfield testified that she accompanied her husband to Baton Rouge prior to making the service calls in the Lafayette area. When asked about her whereabouts while making service calls with her husband in Baton Rouge, Mrs. Mayfield testified as follows:

---

[1] The police report, although used at trial to refresh the investigating officer's memory, was not offered into evidence.

Sometime[s] I'm in the truck; other times he drops me at Goodwill. Then if it's around -- a call around that area, he drop[s] me at Goodwill. He pick[s] me back up. Or if I need to go to Target -- if he gets a call around Target, he pick[s] -- he drops me to Target, then he come[s] back after he finish[es], he picks me up and then we go on [to] the next call."

Mrs. Mayfield testified that the traffic in Lafayette was bumper to bumper at the time of the accident and that she was sleeping in her husband's truck when Mr. Fothergill rear-ended them and awoke her.

Mr. Mayfield also testified that his wife was traveling with him for work at the time of the accident. He testified that the traffic was bumper to bumper on Ambassador Caffery and that his wife woke up upon the vehicle being rear-ended by Mr. Fothergill. Specifically, Mr. Mayfield testified:

I was at -- the traffic came to a complete stop. A few seconds after that I felt a hard impact, and I said to myself, what the hell? And my wife woke up, she started to scream. And I asked her, I said, "Are you okay?" She said, I hit my head." So[,] I caught her, I looked around to make sure she wasn't bleeding.

On cross-examination, Mr. Mayfield testified that there was no physical damage to his truck and that he was not injured in the accident.

Mrs. Simone Fothergill testified that she was traveling with her husband, Thomas Fothergill, from Dickenson, Texas to Houma, Louisiana on the day of the accident. Specifically, Mrs. Fothergill testified that they were slowly driving along Ambassador Caffery "when Mr. Mayfield's truck in front of [them] slammed on the brakes" and caused them to rear-end his truck. Minutes after the accident, Mrs. Fothergill testified that she spoke to Mr. Mayfield and noticed "a man sitting in the passenger seat." When asked whether she had seen a female at the scene of the accident, Mrs. Fothergill testified:

I did. It was a little bit later, maybe ten minutes, I'm not sure of time. This truck -- there was like a little side street that this truck pulled up and just parked there. And, you know, I just saw it go by. You know, it was in front of Mr. Mayfield's vehicle. And I just

looked at it for a minute, and then he was talking. I was just listening to what my husband and he were talking about. And then I looked over and the person got out of the truck and walked around the back, got into the passenger seat. And --

. . . .

It was a female. . . . And I finally asked Mr. Mayfield, I said, "do you know whose truck that is over there?" And he -- he kind of looked and he went, "Oh, that's my wife. We travel back and forth to work together. We live in Jeanerette."

When asked what had happened to Mr. Mayfield's passenger, Mrs. Fothergill responded that "he ran across the street . . . and [he] took off. And I just figured, you know, he just doesn't want to sit around waiting for the police to get there." Mrs. Fothergill testified that she was "flabbergasted" upon receiving "a summons in the mail saying that Jennifer Mayfield was suing [them] for injuries caused in the accident" since "[t]his woman was not in the truck" at the time of the accident. When asked why Mrs. Fothergill felt it necessary to travel from Austin, Texas to Lafayette, Louisiana in order to testify, she stated: "It's just the principle of the thing. There's no money coming out of my pocket, so to speak, but in a way it's coming out of everybody's pocket because, you know, it was just wrong. She wasn't . . . in the truck. And it's . . . it's just the principle thing with me."

At trial, Mr. Fothergill's deposition was introduced as an exhibit and read into the record. Mr. Fothergill testified that on the day of the accident, he was in heavy traffic and that the "truck in front of [him] started to move and then stopped real abruptly" causing him to rear-end Mr. Mayfield's truck. Mr. Fothergill testified that despite the report noting that he had received a citation, he, in fact, did not get a ticket. He also testified that there were two men in Mr. Mayfield's truck at the time of the collision and that both of the men got out of the truck following the accident. When asked about Mrs. Mayfield's presence on the day of the accident, Mr. Fothergill testified that he did not see her in the truck at the time

5

of the accident, but that he saw her drive up in a different truck about twenty-minutes after the accident.

A review of the record demonstrates that the jury understood that the issue before it was whether Mrs. Mayfield was inside her husband's truck at the moment of the collision. Because the parties presented conflicting evidence and testimonies as to Mrs. Mayfield's presence on the day of the accident, the jury had a duty to resolve the conflicting evidence and weigh the testimonies regarding its credibility. Apparently, the jury credited Mr. and Mrs. Fothergills' testimony, and decided to give their testimony more weight, while rejecting Mr. and Mrs. Mayfields' versions of the events. Because the record reveals a reasonable factual basis for the jury's determination, we will not disturb its finding that Mrs. Mayfield was not in her husband's truck at the time of the collision. Accordingly, the Mayfields' first assignment of error is without merit.

In their second assignment of error, the Mayfields claim that the trial court erred in not allowing the crash report into evidence. The Mayfields allege that this error "interdicted the jury's fact-finding duty" and thus, this court should review the record de novo.

Although the Mayfields argue that the trial court erred when it denied the introduction of the December 23, 2014 police report, the trial transcript of November 6, 2017, indicates that the police report was merely used to refresh Officer Mott's memory and does not show that the police report was offered into evidence. Accordingly, we find no merit to this assignment of error.

For these reasons, we affirm the trial court judgment that found in favor of defendants, Thomas Fothergill and State Farm Mutual Automobile Insurance Company, and against the plaintiffs, Jennifer and Bendal Mayfield, dismissing

their claims with prejudice.  Appellate costs are to be paid by plaintiffs, Jennifer and Bendal Mayfield.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2-16.3.